**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COMMISSIONER OF INTERNAL
REVENUE,
     *Respondent-Appellant,*

v.

GWENDOLYN A. EWING,
     *Petitioner-Appellee.*

No. 04-73237

TC No.
1940-01

GWENDOLYN A. EWING,
     *Petitioner-Appellant,*

v.

COMMISSIONER OF INTERNAL
REVENUE,
     *Respondent-Appellee.*

No. 04-73699

TC No.
1940-01

OPINION

Appeals from Decisions of the
United States Tax Court

Argued and Submitted
November 18, 2005—San Francisco, California

Filed February 28, 2006

Before: Jerome Farris, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima

2031

## COUNSEL

Teresa E. McLaughlin, Department of Justice, Tax Division, Washington, D.C., for the respondent-appellant and the cross-appellee.

Karen L. Hawkins, Taggart & Hawkins, Oakland, California, for the petitioner-appellee and the cross-appellant.

---

## OPINION

TASHIMA, Circuit Judge:

The Commissioner of Internal Revenue challenges a decision of the United States Tax Court, concluding that Gwendolyn Ewing was entitled to relief under the so-called equitable innocent spouse provision of the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 6015(f).[1] The Commissioner further contends that the Tax Court did not have jurisdiction to review Ewing's petition under I.R.C. § 6015(e).[2] Ewing cross-appeals the Tax Court's failure to order that she be granted a refund of excess taxes paid. We have jurisdiction to review decisions of the Tax Court pursuant to I.R.C. § 7482(a)(1). We conclude that the Tax Court erred in holding that it had jurisdiction because there was no deficiency asserted, as required by I.R.C. § 6015(e). We therefore reverse the decision of the Tax Court.

## I

Ewing and Richard Wiwi were married in September 1995. They decided to file a joint income tax return, rather than separate returns, for 1995 because the joint return lessened their

---

[1] In subsequent references, Title 26 of the United States Code will be cited as the "I.R.C."

[2] Although the Commissioner argued before the Tax Court that the court did have jurisdiction under § 6015(e), he has changed his position. *See Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1181 (9th Cir. 2004) (stating that "challenges to a federal court's subject matter jurisdiction cannot be waived and may be raised at any time"); *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) (stating that "[s]ubject matter jurisdiction may not be waived").

tax liability. On the return, they reported $57,373 in wages earned by Ewing as a medical technologist, $23,502 in business income earned by Wiwi, who was self-employed as a financial adviser, and $16,892 in taxes due. Ewing had $10,862 withheld from her wages, but Wiwi had made no estimated tax payments; therefore, the return included a form calculating a $190 penalty for underpayment of estimated tax. This penalty was listed on the return, resulting in a liability of $6,220. Ewing and Wiwi both signed the return and included payment in the form of a check from Ewing for $1,069, and a check from Wiwi for $551.

In 1999, Ewing filed a Form 8857, Request for Innocent Spouse Relief, seeking relief from the remaining unpaid 1995 tax liability. "Generally, marital partners who file a joint return are jointly and severally liable for its accuracy and any assessments due." *Wiksell v. Comm'r*, 90 F.3d 1459, 1461 (9th Cir. 1996); *see* I.R.C. § 6013(d)(3) (providing that, "if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several"). However, a spouse may apply for innocent spouse relief from joint and several liability under I.R.C. § 6015, which sets forth three possible avenues for relief.

Form 8857 lists the three possible forms of relief, which correspond to three subsections of § 6015: (1) separation of liability for an understatement of tax, if the taxpayers are divorced, separated, or living apart, *see* § 6015(c); (2) innocent spouse relief for an understatement of tax due to "erroneous items" of the spouse or former spouse of which the innocent spouse was unaware, *see* § 6015(b); and (3) equitable relief for an underpayment of tax, if the taxpayer does not qualify for relief under either of the first two options, *see* § 6015(f). Ewing checked the third option, seeking equitable relief from the 1995 tax liability.

Subsection (f) states in full:

Under procedures prescribed by the Secretary, if —

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

I.R.C. § 6015(f).

In a statement attached to her Form 8857, Ewing stated that, when she married Wiwi on September 9, 1995, she did not know that Wiwi had failed to make estimated tax payments, but he later promised to pay the tax due, and she did not learn that the tax had not been paid until November 1998. She included a computation, showing her 1995 wages, withholdings, and an alleged resultant tax liability of zero.

In a preliminary determination, the Internal Revenue Service ("IRS") denied Ewing relief on the following basis: "You did not meet the requirements for equitable relief in that you were not divorced, separated or lived apart for 12 months prior to the date of the request, lack of hardship and no legal obligation of one spouse over the other." Ewing appealed the preliminary determination.

In a subsequent report, the IRS concluded that Ewing should have known about the deficiency when she signed the return, that she and Wiwi were still married and living together, and that she had sufficient income to pay the liability. Accordingly, the IRS sent Ewing a notice of determination, denying her relief under § 6015. An accompanying memo addressed the requirements for relief and gave as rea-

sons for the denial that Ewing "is still married to the nonre-questing spouse, and living with him, there would be no hardship, there is no marital abuse, and no spousal legal obligation. She had knowledge when the joint return was filed that there was a deficiency or understatement due to lack of estimated payments."

Ewing then filed a petition for review in the Tax Court. The Commissioner filed a motion to dismiss for lack of jurisdiction, on the basis that Ewing's petition was not timely filed. The Tax Court *sua sponte* raised the issue of whether the court lacked jurisdiction under I.R.C. § 6015(e) to review the denial of equitable relief. *Ewing v. Comm'r*, 118 T.C. 494, 495 (2002) ("*Ewing I*"). The court concluded that it did have jurisdiction over the petition and that the petition was timely.[3] *Id.* at 510.

In a subsequent opinion, the Tax Court addressed the issues of whether, in determining Ewing's eligibility for relief, it can consider evidence introduced at trial that was not included in the administrative record, and whether Ewing was entitled to relief under § 6015(f). *Ewing v. Comm'r*, 122 T.C. 32 (2004) ("*Ewing II*"). The court concluded that a trial de novo was appropriate and that the evidence was not limited to the administrative record. *Id.* at 44. The court further concluded that Ewing was entitled to equitable relief and that the Commissioner accordingly had abused his discretion in denying her relief. *Id.* at 49. The Commissioner filed a timely notice of appeal. Ewing filed a cross-appeal requesting a refund.

## II

Decisions of the Tax Court are reviewed "in the same manner and to the same extent as decisions of the district court in civil bench trials." *Crawford v. Comm'r*, 266 F.3d 1120, 1121

---

[3]The Commissioner does not appeal the finding that the petition was timely.

(9th Cir. 2001) (per curiam). Factual findings are reviewed for clear error, and conclusions of law, including the court's construction of the I.R.C., are reviewed de novo. *Suzy's Zoo v. Comm'r*, 273 F.3d 875, 878 (9th Cir. 2001). The existence of subject matter jurisdiction is a question of law reviewed de novo. *Crawford*, 266 F.3d at 1123; *see also Maier v. Comm'r*, 360 F.3d 361, 363 (2d Cir. 2004) (stating that the Tax Court's interpretation of statutes defining the scope of its own jurisdiction is reviewed de novo).

## III

**[1]** The Tax Court, like any federal court, is a court of limited jurisdiction. *Estate of Branson v. Comm'r*, 264 F.3d 904, 908 (9th Cir. 2001); *Crawford*, 266 F.3d at 1121. As such, it may exercise jurisdiction only to the extent authorized by Congress. *Branson*, 264 F.3d at 908. "The Tax Court's jurisdiction is defined and limited by Title 26 and it may not use general equitable powers to expand its jurisdictional grant beyond this limited Congressional authorization. It may exercise its authority only within its statutorily defined sphere." *Id.*; *see also Clapp v. Comm'r*, 875 F.2d 1396, 1399 (9th Cir. 1989) ("Congress has granted the Tax Court very narrow, limited jurisdiction.").

Section 6015(e) sets forth the requirements for a petition for review by the Tax Court and states, in pertinent part:

> In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply —
>
> (A) In general. — In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section . . . .

I.R.C. § 6015(e).

**[2]** The plain language of the statute clearly indicates that the Tax Court has jurisdiction over a petition only when a deficiency has been asserted and the taxpayer has elected relief under subsection (b) or (c). The Tax Court, however, concluded that it had jurisdiction over the petition, despite the fact that no deficiency had been asserted against Ewing, and despite the fact that she had elected relief only under subsection (f), *i.e.*, not under subsection (b) or (c). We disagree and conclude that the Tax Court lacked jurisdiction because no deficiency had been asserted.

The Tax Court correctly set forth the principle that, if the statute is ambiguous or silent, the court then may look to legislative history in order to determine congressional intent. *Ewing I*, 118 T.C. at 503; *see, e.g.*, *Cmty. Bank v. G.V.M. Trust*, 366 F.3d 982, 986 (9th Cir. 2004) (stating that, when the text of a statute is ambiguous, the court may examine the statute's purpose, subject matter, context, and legislative history). The court then proceeded, however, to examine legislative history to find ambiguities in a statute that appears clear on its face. *Cf. Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002) (stating that "reference to legislative history is inappropriate when the text of the statute is unambiguous").

The Tax Court began with the background of § 6015. As initially enacted, § 6015(e) did not contain the language, "against whom a deficiency has been asserted." *See* 26 U.S.C. § 6015(e) (1999) (showing that subsection (e) began with the phrase, "In the case of an individual who elects to have subsection (b) or (c) apply"); *see also* Internal Revenue Service Restructuring & Reform act of 1998, Pub. L. No. 105-206, § 3201, 112 Stat. 685, 734-40 (1998) (same). Congress amended the statute in December 2000, adding the phrase "against whom a deficiency has been asserted." *See* Consolidated Appropriations Act — FY 2001, Pub. L. No. 106-554,

§ 1(a)(7), 114 Stat. 2763, 2763A-641 to -643 (2000). There is no dispute that no deficiency had been asserted against Ewing. *See Ewing I*, 118 T.C. at 505-06 ("Because [the Commissioner] has not challenged the tax reported on the return, no deficiency has been asserted.").

Despite the plain language of the amendment, the Tax Court concluded that the statute was ambiguous because § 6015(e)(1)(A) "still contains" the language that grants the Tax Court jurisdiction to determine the relief available to a petitioner "under this section." *Id.* at 504; *see* I.R.C. § 6015(e)(1)(A) (stating that the Tax Court shall have jurisdiction "to determine the appropriate relief available to the individual under this section" if the petitioner meets the requirements of the statute). The court reasoned that, prior to this amendment, it had interpreted the phrase, "under this section," to give it jurisdiction over the entire statute. *Ewing I*, 118 T.C. at 504. The court further reasoned that the Commissioner did not need to issue a notice of deficiency in order to assess the tax, "[b]ecause the tax was reported on the return," and both parties were aware of the unpaid tax liability, thus vitiating Congress' concern that taxpayers would submit premature requests for relief before the Commissioner had asserted that additional taxes were owed. *Ewing I*, 118 T.C. at 506.

The cases on which the Tax Court relied, *Fernandez v. Comm'r*, 114 T.C. 324 (2000), and *Butler v. Comm'r*, 114 T.C. 276 (2000), do not address the question of whether the Tax Court has jurisdiction where no deficiency has been asserted because they were decided *prior to* the amendment adding the phrase. Rather, those cases dealt with the court's jurisdiction over a claim under subsection (f).[4]

---

[4]The Second Circuit has noted that the question of the Tax Court's jurisdiction over an appeal of an adverse determination under I.R.C. § 6015(f) is "not free from doubt." *Maier*, 360 F.3d at 363 n.1. The court pointed out that "only petitions to review IRS determinations under subsections (b)

**[3]** The Tax Court itself has acknowledged that "[w]hen a statute appears to be clear on its face, there must be unequivocal evidence of legislative purpose before interpreting the statute so as to override the plain meaning of the words used therein." *Fernandez*, 114 T.C. at 330. Yet, by interpreting the statute as not requiring the assertion of a deficiency, the Tax Court simply has written the language out of the statute. *See Ewing I*, 118 T.C. at 511 (Laro, J., dissenting) (stating that the majority declines to apply many of the statements in § 6015(e) "in order to reach a conclusion that the majority considers more practical than the plain meaning application that the text demands"). This violates the basic principle of statutory construction that " 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' " *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 928 (9th Cir. 2004) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)), *cert. denied*, 125 S. Ct. 1694 (2005); *see also Biehl v. Comm'r*, 351 F.3d 982, 986 (9th Cir. 2003) (stating that " '[s]tatutory interpretation begins with the plain meaning of the statute's language' ") (quoting *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000)), *cert. denied*, 125 S. Ct. 1292 (2005). We hold that the Tax Court erred in concluding that it had jurisdiction over Ewing's petition because no deficiency had been asserted.

---

and (c) are expressly enumerated in § 6015(e) and (h)." *Id.*; *see also French v. United States (In re French)*, 255 B.R. 1, 2 (Bankr. N.D. Ohio 2000) (dismissing for lack of jurisdiction the debtor's claim that she was entitled to relief under § 6015(f) because "Congress chose to exclude from judicial review the issue of whether a taxpayer is entitled to equitable relief under § 6015(f)"); *Mira v. United States (In re Mira)*, 245 B.R. 788, 791-92 (Bankr. M.D. Pa. 1999) (reasoning that § 6015(f) grants the Secretary of the Treasury discretion to grant equitable relief and, as a decision "committed to agency discretion by law," 5 U.S.C. § 701, it was not reviewable by the court).

## IV

**[4]** Ewing contends in her cross-appeal that the Tax Court erred in failing to grant her a refund. We reject her contention because she failed to raise it below, and she has failed to demonstrate any exceptional circumstances why we should consider it.[5] *See Kochansky v. Comm'r*, 92 F.3d 957, 959 (9th Cir. 1996) (declining to consider an argument not raised in the Tax Court); *Monetary II Ltd. P'ship v. Comm'r*, 47 F.3d 342, 347 (9th Cir. 1995) (deeming an argument waived where the petitioner did not raise it in the Tax Court and provided no justification for the failure to do so).

Ewing did not raise the issue of a refund in the Tax Court. Her Form 8857, Request for Innocent Spouse Relief, contains no request or claim for a refund. We disagree with Ewing's contention that her request for relief in Form 8857 constituted an informal claim for a refund. Unlike *Washington v. Commissioner*, 120 T.C. 137 (2003), on which she relies, Ewing's statement attached to her Form 8857 merely stated that her tax liability for 1995 was zero. By contrast, the petitioner in *Washington* specifically requested tax refunds with interest for each of the tax years in question. *See id.* at 162.

**[5]** Furthermore, Ewing is not entitled to a refund because she failed to comply with the requirements of I.R.C. §§ 6015(g) and 6511. We reject Ewing's contention, raised for the first time in her reply brief as cross-appellant, that the

---

[5]Even if she had raised her refund claim in the Tax Court, she fails to support her contention with any argument in her response to the Commissioner's brief, which, for purposes of her cross-appeal, is her principal brief. *See* Fed. R. App. P. 28.1(c) (delineating the requirements of briefs in cross-appeals). Thus, the issue is not sufficiently raised and is deemed abandoned. *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1169 n.1 (9th Cir. 2003) ("While their brief mentions the issue . . . the issue is not argued and we deem it abandoned."), *cert. denied*, 540 U.S. 1149 (2004); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

doctrine regarding an informal claim for a refund, described in *United States v. Kales*, 314 U.S. 186 (1941), applies to her case. The doctrine addresses whether an informal claim for a refund should stop the running of the statute of limitations for a refund claim. *First Sec. Bank of Idaho, N.A. v. Comm'r*, 592 F.2d 1046, 1049 (9th Cir. 1979). It is concerned with claims that are "deficient merely in one or two of the technical requirements imposed by the Treasury regulation [26 C.F.R. § 301.6402-2(b)(1)]." *BCS Fin. Corp. v. United States*, 118 F.3d 522, 524 (7th Cir. 1997); *see also Kaffenberger v. United States*, 314 F.3d 944, 954 (8th Cir. 2003) (citing *Kales* and stating that "the Supreme Court has endorsed informal claims filed within the statutory period that have technical deficiencies, as long as a valid refund claim is subsequently made after the period has run"). There is no evidence that Ewing made a technically-deficient claim within the statutory period. Furthermore, any such informal claim "must have been followed by a formal claim that remedied any defects in the informal claim." *Id.* at 955. The informal claim doctrine accordingly does not apply. For all of these reasons, we dismiss Ewing's cross-appeal.

## V

The Tax Court's interpretation of I.R.C. § 6015(e) conflicts with a plain reading of the statute. We therefore reverse the decision of the Tax Court, concluding that it had jurisdiction over Ewing's petition.[6] In light of our conclusion that the Tax Court did not have jurisdiction over Ewing's petition, we vacate the Tax Court decision in *Ewing II*, 122 T.C. 32, addressing the scope of review by the Tax Court and Ewing's eligibility for relief. We further reject Ewing's cross-appeal in which she requests a refund.

---

[6]Because we conclude that the Tax Court lacked jurisdiction, we decline to address the other issues raised in the Commissioner's appeal.

**No. 04-73237, REVERSED and VACATED.**

**No. 04-73699, DISMISSED.**